UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 13-80280-CIV-HURLEY/HOPKINS

MURPHY & KING, PROFESSIONAL
CORPORATION, a Massachusetts
Professional Corporation,

    Plaintiff,
v.

BLACKJET, INC., a Delaware Corporation,
successor by merger to GREEN JETS, INC.,
a Florida Corporation,

    Defendant.
_____/

BLACKJET TECHNOLOGY, INC.,

    Third-Party Impleader Defendant.
_____/

**PLAINTIFF, MURPHY & KING'S PROPOSED FINDINGS
OF FACT AND CONCLUSIONS OF LAW**

    Plaintiff Murphy & King, Professional Corporation ("Murphy & King") through its undersigned counsel, hereby submits its Proposed Findings of Fact And Conclusions of Law and requests that the Court adopt the same after the trial of this matter.

## I. INTRODUCTION

    This case involves Murphy & King's efforts to collect on a final judgment ("Judgment") entered by this Court against Defendant Blackjet, Inc. ("Blackjet") on January 27, 2014. As set forth in its Impleader Complaint, Murphy & King claims that Third Party Defendant Blackjet Technology, Inc. ("Blackjet Technology") is liable to Murphy & King for the full amount of the Judgment under successor liability theories of (1) mere continuation and (2) de facto merger.

This cause came before the Court during a non-jury trial in West Palm Beach, Florida, on _____ (the "Bench Trial"). The Court has considered the testimony presented, the exhibits entered into evidence, deposition transcripts submitted by the parties, and the argument of the parties. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure the Court makes the following findings of fact and conclusions of law. If any finding of fact is later deemed to be a conclusion of law it is hereby designated as such. Similarly, if any conclusion of law is later deemed to be a finding of fact, it is hereby designated as such.

## II. FINDINGS OF FACT

1. On January 27, 2014, this Court entered a Final Judgment in the amount of $376,981.51 (the "Judgment") against Blackjet.

2. On April 9, 2015, a Writ of Execution was issued in favor of Murphy & King in an effort to collect on the Judgment.

3. The Writ of Execution remains unsatisfied and is valid and outstanding.

4. The entire amount of the Judgment remains unsatisfied, plus accrued and accruing interest.

5. On April 27, 2009, Haysjet Holdings, LLC ("Haysjet") made a loan to Blackjet's predecessor, Green Jets Incorporated ("Green Jets") in the amount of $500,000.00 (the "Loan"). The Loan was evidenced by a Loan and Security Agreement.

6. Haysjet is owned, controlled and operated by Stephen Hays ("Hays"), the sole managing member of Haysjet.

7. At all times material hereto, Hays was a director of Green Jets, Blackjet, Inc., and now, Blackjet Technology.

8. Pursuant to the Loan and Security Agreement, Haysjet held a security interest in all of Green Jets' assets as collateral for the Loan (the "Assets").

9. On January 20, 2010, Haysjet and Green Jets entered into a Loan Modification Agreement (the "First Modification"): whereby (i) the loan amount was increased to $600,000.00; and (ii) Haysjet was given an extra 5% ownership interest in Green Jets in exchange for the additional $100,000.00.

10. On February 29, 2012, Haysjet and Green Jets entered into another Loan Modification Agreement (the "Second Modification").

11. The Second Modification (i) extended the maturity date of the loan from December 31, 2010 to March 31, 2014; and (ii) required that under no circumstances would Haysjet place Green Jets in default under any provision of the loan prior to March 31, 2014*.*

12. Green Jets merged with and into Blackjet in March 2013.

13. On March 19, 2013, Murphy & King filed suit against Blackjet in the instant action.

14. On August 7, 2013, Rotchin e-mailed Hays and Grimes and acknowledged that the loan documents, including the Second Modification, prevented Haysjet from defaulting Blackjet until March 31, 2014. Rotchin stated his belief that the Second Modification would allow a default earlier if certain capital contribution requirements had not been met.

15. On September 13, 2013, Rotchin e-mailed Hays and requested a default letter from Haysjet to Blackjet and requested that the default letter provide that Blackjet had to cure the default by raising $500,000 by the following week.

16. As requested by Rotchin, on September 16, 2013, Hays, as the managing member of Haysjet (while also a director of Blackjet), sent a letter to Blackjet and Rotchin, the President

of Blackjet, declaring the loan in default due to alleged inability of Blackjet to pay its debts as they became due and potential insolvency.

17. Hays testified that he had no knowledge of any specific debts that Blackjet could not pay at the time the Haysjet default letter was sent and the basis of the alleged insolvency was discussion with his fellow Blackjet board members, Rotchin and Grimes. Hays testified that he had no knowledge of and Haysjet did not default Blackjet based on Blackjet's failure to meet capital contribution requirements as suggested by Rotchin by e-mail on August 7, 2013.

18. Despite Blackjet's contention that Hays did not participate, due to conflicts of interest, in meetings of the Blackjet board of directors wherein the Haysjet loan was discussed or action taken, Hays did not recuse himself and testified that he did not purposefully miss any Blackjet board meeting.

19. The Haysjet default letter stated that the default could be cured by Blackjet raising $500,000.00 in four (4) days, by September 20, 2013; otherwise, Haysjet would avail itself of all remedies set forth in the loan documents.

20. The Loan and Security Agreement specifically requires that Blackjet be given ten (10) days to cure any default.

21. Thus, the September 16, 2013 default letter did not give Blackjet the contracted-for time to cure the default.

22. On September 16, 2013, the same day as the Haysjet default letter, Blackjet, through Rotchin, sent a letter to Blackjet shareholders entitled "Confidential Shareholder Briefing." The letter attached various documents, including the Haysjet default letter sent the same day, and asked for investments in the form of promissory notes.

23. The September 16, 2013 Haysjet default letter was in direct contravention to the Second Modification, prohibiting the loan to be called into default prior to March 31, 2014.

24. Haysjet had no reasonable basis to declare the loan into default and the Haysjet default letter was instead sent to Blackjet at the request of Rotchin. The Haysjet default letter was sent prematurely under the clear language of the loan documents, including the Second Modification which prevented default prior to March 31, 2014. Additionally, the Haysjet default letter was defective in that it failed to provide the contractually mandated ten (10) day cure period.

25. The Haysjet default letter was sent as part of Blackjet's efforts to circumvent Blackjet's debtor obligations to Murphy & King, including the anticipated and forthcoming Judgment.

26. Two months after sending the Haysjet default letter, Haysjet filed a UCC Financing Statement on November 14, 2013 attempting to perfect its lien in the Blackjet Assets.

27. On March 4, 2014, Haysjet conducted a "public sale" of the Blackjet Assets securing the Loan.

28. During the six (6) months between the Haysjet default letter and the "public sale" Blackjet continued to possess, control and utilize the Assets for the purpose of operating Blackjet's business.

29. The "public sale" took place at Haysjet's attorneys' office in Fort Lauderdale on March 4, 2014, six (6) weeks after the Court entered the Judgment against Blackjet.

30. The Assets sold at the "public sale" were acquired by Haysjet after a single credit bid of $5,000.00.

31. Haysjet did not perform an appraisal of the Blackjet Assets at any time to determine their actual fair market value.

32. The Haysjet bid was the only bid submitted at the "public sale."

33. After the "public sale," the ownership of the Assets – but not possession or control – were transferred to Haysjet as a result of the improperly declared default in violation of the loan documents.

34. Blackjet Technology was formed on March 31, 2014 to license the Blackjet Assets from Haysjet and to continue operating Blackjet's business.

35. Blackjet ceased doing business on April 21, 2014.

36. Blackjet and Blackjet Technology continued utilizing all of the Blackjet Assets, including Blackjet's intellectual property and the Blackjet website and mobile application, after the "public sale" of the Assets.

37. On April 1, 2014, Blackjet Technology and Haysjet entered into a Formation and Funding Agreement ("FAFA").

38. The FAFA provides that Blackjet Technology was formed to "implement a business plan based on the Blackjet business model."

39. The FAFA provides that Blackjet Technology will:

    (a) continue to use the website (www.blackjet.com) previously operated by Blackjet.

    (b) "leverag[e] the Blackjet assets and the talent of the principals of Blackjet," along with the intellectual property of Blackjet to run Blackjet Technology.

40. The FAFA provides that Haysjet will license to Blackjet Technology the right to use the Assets pursuant to a License Agreement, and once specific conditions are met, Blackjet Technology will become the free and clear owner of the Assets.

41. The FAFA provides that the Assets "get contributed to the new company" and that Haysjet will "actually transfer the [A]ssets to the new company."

42. One of the contingencies for the parties' execution of the FAFA was the simultaneous execution of a License Agreement, pursuant to which Haysjet would provide a royalty-free license to Blackjet Technology to use the Assets.

43. The License Agreement had a term of one (1) year, expiring on April 1, 2015.

44. Under the License Agreement, the term "Assets" was defined as "all the assets of Blackjet" which were acquired by Haysjet, including "certain physical assets, software, trademark, internet domains, as well as two patent applications filed with the USPTO, accounts and other assets," i.e. the Blackjet Assets.

45. The FAFA also defines the term "Assets" as the Blackjet Assets.

46. The only consideration given for the license of the Assets to Blackjet Technology was a one-third ownership stake in Blackjet Technology to Haysjet.

47. Hays testified that he did not recall if the term of the License Agreement was ever extended beyond the initial one (1) year period, but that Blackjet Technology continued possessing, controlling and using the Blackjet Assets after April 1, 2015 and continuing to this day, for the purpose of continuing to operate the Blackjet business.

48. The physical, mailing, and principal addresses for Green Jets, Blackjet and Blackjet Technology are all the same.

49. When Green Jets was incorporated in 2008, it had among its officers and directors Dean Rotchin, Joseph Grimes, and Stephen Hays.

50. When Green Jets merged with and into Blackjet in March 2013, it had among its officers and directors Dean Rotchin, Joseph Grimes, and Stephen Hays.

51. The officers and directors of Blackjet Technology consist, among others, Dean Rotchin, Joseph Grimes, and Stephen Hays.

52. This Court finds that Blackjet and Blackjet Technology have a common identity of its primary shareholders, officers, and directors.

53. All of the employees of Blackjet Technology worked for Blackjet.

54. Blackjet Technology is operating in the same physical space that Blackjet operated in.

55. Blackjet Technology is performing under the same lease that Blackjet performed under.

56. The books and records of Blackjet are physically located at Blackjet Technology's principal place of business.

57. Blackjet Technology utilizes the same customer lists as Blackjet.

58. Blackjet generated revenue from aircraft charters.

59. Blackjet Technology generates revenue from aircraft charters.

60. Blackjet generated revenue from reserving private charter airline seats (through the seat reservation system) for its clients.

61. Blackjet Technology generates revenue from reserving private charter airline seats (through the seat reservation system) for its clients.

62. Blackjet Technology is profitable.

63. Blackjet Technology operates through the Blackjet website, www.blackjet.com, and through the Blackjet mobile application.

64. Blackjet Technology engages in the same business that Blackjet did.

65. Blackjet Technology provides the same services that were provided by Blackjet.

66. The Court finds that Blackjet Technology conducts the same, or similar, business as Blackjet, including brokerage charter aircrafts and selling seats on private jets.

67. The Court finds that the improper default and foreclosure of the Blackjet Assets at the direction of Blackjet directors and in concert with Hays and Haysjet, the shutting down of Blackjet and formation of Blackjet Technology, the royalty-free licensing of the Blackjet Assets to Blackjet Technology by Haysjet to continue operation of Blackjet's business was undertaken by the directors of Blackjet to avoid Blackjet's debtor obligations to Murphy & King.

### III.  CONCLUSIONS OF LAW

Based on the foregoing findings of fact, this Court concludes that Blackjet Technology is the mere continuation of Blackjet and that a de facto merger occurred between Blackjet and Blackjet Technology.  As such, Blackjet Technology is liable for all amounts under the Judgment and the reasonable attorneys' fees and costs incurred by Murphy & King in these proceedings supplementary.

A.  **Successor Liability Claims In Proceedings Supplementary**

Florida law generally does not impose liabilities of a predecessor corporation on a successor corporation unless (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de factor merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.  Bernard v. Kee Mfg. Co. Inc., 409 So. 2d 1047, 1049 (Fla. 1982) (emphasis added).

The imposition of liability upon a successor corporation is based on the notion that no corporation should be permitted to commit a tort or breach of contract and avoid liability through corporation transformation in form only.  Amjad Munim, M.D., P.A. v. Azar, M.D., 648 So. 2d 145, 154 (Fla. 4th DCA 1995).

In these proceedings supplementary, this Court has the power to fashion an equitable remedy in order to afford Murphy & King complete relief as to the Judgment and the successor liability of Blackjet Technology.  Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc., 688 F. Supp 1516, 1521 (S.D. Fla. 1988).  Florida Courts have consistently held that proceedings supplementary to execution and Fla. Stat. § 56.29 "must be given a liberal construction in order to afford a judgment creditor the most complete relief possible" to satisfy a judgment.  Pollizzi v. Paulshock, 52 So. 3d 786,789 (Fla. 5th DCA 2010);  Regent Bank v. Woodcox, 636 So. 2d 885, 886 (Fla. 4th DCA 1994).

### B. Blackjet Technology is Liable for the Judgment Because it is the Mere Continuation of Blackjet

This Court finds that as a matter of law, Murphy & King is entitled to enforce its Judgment against Blackjet Technology because Blackjet Technology is a mere continuation of Blackjet.

During the pendency of the underlying action, Blackjet's directors and officers began efforts to continue Blackjet's business under a new company.  The first step of those efforts was to Haysjet declare the loan to Blackjet to be in default and to begin efforts to foreclose Blackjet's assets so they would not be subject to Blackjet's creditors such as Murphy & King.  Shortly after the entry of the Judgment, Blackjet Technology was formed to license Blackjet's assets from Haysjet and to continue operating Blackjet's business.  Blackjet was then shut down and left for Murphy & King to attempt to collect its Judgment against the non-operating entity.

The mere continuation theory of liability arises when the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. See <u>Bud Antle, Inc. v. Eastern Foods, Inc.</u>, 758 F.2d 1451 (11th Cir. 1985) (en banc); <u>Azar</u>, 648 So. 2d at 154. Blackjet Technology continues to operate the Blackjet business using the Blackjet Assets, occupying the same place of business, and using Blackjet employees. Blackjet Technology was set up for the purpose of engaging in Blackjet's business. Blackjet Technology has a common identity of shareholders, officers, and directors as Blackjet. Blackjet Technology is the reincarnation of Blackjet, and merely the "new hat" for the conduct of Blackjet's business. Under the mere continuation theory, "the change is in form, not substance." That is precisely the case here.

In <u>Azar</u>, principals of an existing company formed a new company to impede the rights of the creditor to collect on a judgment against the existing company. The new company was held liable for the judgment as the mere continuation of the old company. The <u>Azar</u> Court stated that under Florida law, "a voluntary conveyance by one who is indebted is presumptively fraudulent when attacked by a judgment creditor upon a debt existing at the time of the conveyance." Successor liability should lie "when [a] transfer occurs between two corporations controlled by the same individuals." <u>Azar</u>, 648 So. 2d at 154. In finding that the new company was the mere continuation of the existing company, having the same management, personnel, assets, location and stockholders, the Azar Court noted that "the new P.A. is the old P.A. dressed up with a new name and controlled by the same individual." <u>Id</u>.

Likewise, here, Blackjet Technology has the same management, officers, directors, and employees, operates from the same physical location, conducts the same business, and utilizes

the same Assets to run its business. Blackjet Technology is a mere continuation of Blackjet, "dressed up with a new name and controlled by the same individual[s]." Id.

Similarly, in Allied, AGFA obtained a judgment against Allied and, shortly after entry of the judgment, Allied ceased operation. Allied's customers were told to call United, a successor company that was formed upon Allied's "demise." United was in the same business, employed most of the same people, and operated out of the same office as Allied. The Court noted that it was free to "fashion an appropriate equitable remedy to afford a judgment creditor as complete relief as possible, including finding a new corporation liable for a judgment against its predecessor corporation when the new corporation is merely the alter ego of the judgment debtor." Allied, 688 F. Supp at 1519. The Court held that United was a mere continuation of Allied and therefore liable under the judgment against Allied. Id. at 1519-20.

A similar issue was considered in In re Aqua Clear Tech., Inc., 361 B.R. 567, 578 (S.D. Fla. 2007) (holding that a newly formed company was liable to creditors of the predecessor company and finding that the debtor created the new company to continue the business of the debtor, and that the company was a "continuation of [debtor's] business in another name, using the same assets and employees as had its predecessor"). The Court there entered a separate judgment against the newly formed successor corporation, thereby holding the successor company liable in full on the judgment against the original debtor. Id.; see also Global One Fin., Inc. v. Intermed Servs., P.A., 2015 WL 1737710, at * 4-5 (S.D. Fla. April 16, 2015) (holding that successor was liable for judgment against predecessor under mere continuation theory, "regardless of the existence of any element of fraudulent intent," because (1) predecessor shut down and opened successor soon after judgment was entered, (2) the successor's business model

was the same, (3) the successor operated out of the same office, with the same assets and customers, and (4) the owners and employees were substantially the same).

The evidence presented the Court shows that, during the pendency of the underlying action and continuing until shortly after the entry of the Judgment, the principals of Blackjet, one of which was the sole owner and manager of Blackjet's lender, Haysjet, "foreclosed" Blackjet's Assets, formed and licensed the Blackjet Assets to Blackjet Technology so that it could continue Blackjet's business in the same office, with the same assets, customers, employees, owners, officers and directors as Blackjet. Blackjet Technology is the mere continuation of Blackjet and Murphy & King is therefore entitled to enforce the Judgment against Blackjet Technology.

### C. Blackjet Technology is Also Liable for the Judgment Because it is the Successor by De Facto Merger to Blackjet

The Court finds that Murphy & King is entitled to enforce its Judgment against Blackjet Technology as the successor by de facto merger to Blackjet.

A de facto merger occurs where one entity is absorbed by another without formal compliance with the statutory requirements for a merger. Azar, 648 So. 2d at 153. To determine if a de facto merger has occurred, the finder of fact may look at any factors reasonably indicative of commonality or distinctiveness. Lab Corp. of Am. v. Prof. Recovery Network, 813 So. 2d 266, 270 (Fla. 5th DCA 2002) (discussing that determination of de facto merger involves whether there has been a change in form, but not in substance, in the corporate identity, essentially whether each entity has "run its own race" or whether there was only a "passing of the baton"). A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders. 300 Pine Island Assoc. v. Steven L. Cohen & Assoc., 547 So. 2d 255, 256 (Fla. 4th DCA 1989).

The Court finds that a de facto merger occurred between Blackjet and Blackjet Technology because Blackjet and Blackjet Technology operate the exact same business and the entities have commonality of management, directors, personnel, location and web presence. Blackjet Technology operates Blackjet's business using the Blackjet Assets. Every Blackjet Technology employee was an employee of Blackjet. Blackjet Technology was created and formed solely for the purpose of engaging in and carrying on Blackjet's business, accomplished by leveraging the same assets, management, employees, officers and directors of Blackjet. Blackjet "passed the baton" to Blackjet Technology. They are not separate and independent entities. Blackjet Technology is liable to Murphy & King for the Judgment because Blackjet Technology is the successor by de facto merger to Blackjet.

### D. The Foreclosure Sale By Haysjet Does Not Preclude A Finding Of Successor Liability

Blackjet Technology asserts that because the assets of its predecessor, Blackjet, were encumbered by a valid senior lien, Blackjet Technology cannot be liable under de facto merger and mere continuation theories. As a threshold matter, there is no evidence confirming that the UCC foreclosure sale was valid. Haysjet had no reasonable basis to support the alleged defaults in the Haysjet default letter, the default letter was sent in concert with and at the request of Rotchin, the default letter was premature under the loan documents, and the cure period was shorter than permitted under the loan documents. The UCC Financing Statement relied on in conducting the foreclosure and sale was filed two months after the default letter, the assets were never appraised and there is no indication of a commercially reasonable sale. Even if that was not the case and the foreclosure was valid, it would not preclude a finding of mere continuation or de facto merger.

There are no Florida cases addressing this specific issue, but legal authority from other jurisdictions involving the interpretation of similar statutory schemes as Florida's are illustrative. A UCC foreclosure sale affords an acquiring corporation no automatic exemption from successor liability. Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 267 (1st Cir. 1997) (stating that "although foreclosure by a senior lienor often wipes out junior-lien interests in the same collateral, it does not discharge the debtor's underlying obligation to junior lien creditors" and that "by its nature, the foreclosure process cannot preempt the successor liability inquiry"); Fiber-Lite Corp. v. Molded Acoustical Prod. of Easton, Inc., 186 B.R. 603, 609 (E.D. Pa. 1994) (finding successor corporation liable under mere continuation theory where predecessor company defaulted under an agreement with its senior secured lender, the lender foreclosed on all of the predecessor's assets, and then the lender and predecessor engineered and financed an asset purchase by a successor corporation whose only shareholders were the children of the sole shareholder of the predecessor corporation, stating that "one could easily conclude that the transaction was entered into fraudulently and orchestrated by the secured lender to allow its debtor — the predecessor corporation — to escape liability from unsecured debt").

Milliken & Company v. Duro Textiles, 19 Mass. L. Rptr. No. 22, 509 (Mass. June 14, 2005) also provides support. The Court applied the same four exceptions for successor liability as called for under Florida law. Plaintiff Milliken obtained a judgment against defendant Duro. New Duro was the corporate successor to Duro. New Duro was formed one month after Milliken filed its lawsuit against Duro. There was a UCC foreclosure sale of the Duro assets by the senior lender, who also had a stake in New Duro. New Duro operated from the same location as Duro, performs the same operation as Duro, offers the same services, employed all of Duro's

employees, and used the Duro phone number. Id. at 512. The Court found that New Duro was the mere continuation of Duro and, thus, New Duro was responsible for Duro's corporate debts.

Here, Murphy & King has not alleged fraudulent transfer, but rather separate and distinct claims for mere continuation and de facto merger. Blackjet Technology has attempted unsuccessfully throughout this proceeding supplementary to argue that Murphy & King was required to establish a fraudulent transfer to maintain its proceeding supplementary claims. Similarly, the defendants in Duro relied on fraudulent transfer theories to argue that Milliken could not recover because there was no fraudulent transfer of assets. Id. at 514. The Court noted that fraud is only one of four separate exceptions to the general rule against successor liability and that each exception is separate and distinct from the others. The Court also stated that imposition of successor liability does not depend on the status of a particular creditor as secured or unsecured or on whether the assets of the predecessor corporation were sufficient to pay all its outstanding debts; rather, the analysis focuses on whether one company has become another for purposes of its corporate debt. Id. The Court found that the senior secured lender, the majority shareholders of Duro, and New Duro used the UCC foreclosure sale to attempt to eliminate the debt of Duro's unsecured creditors while keeping control of Duro and retaining its value as a going concern with the hope of future profitability, and concluding that the undisputed facts "warrant judgment in favor of Milliken on its debt against New Duro under either the de facto merger or mere continuation theories of successor liability." Id. at 516 (stating that "when the owner of the selling corporation and its secured creditor are one and the same, to allow, by the mechanism of a foreclosure sale, the owner to avoid paying its creditors without losing any control of the potential future profitability of the business would be to permit precisely what the successor liability exception is intended to prevent").

Accordingly, Blackjet Technology's arguments regarding the requirement to establish a fraudulent transfer and the purported valid UCC foreclosure sale fail and do not prevent the Court enforcing the Judgment against Blackjet Technology under mere continuation and de facto merger theories.

### E. Murphy & King Is Entitled To An Award Of Attorney's Fees And Costs

Pursuant to Section, 56.29(11), Florida Statutes, Murphy & King is entitled to recover its reasonable attorneys' fees and costs against Blackjet for having to bring and maintain this meritorious proceeding supplementary action. As Blackjet Technology has been found to be the mere continuation of and successor by de facto merger to Blackjet, the award of reasonable attorneys' fees and costs incurred by Murphy & King is enforceable against Blackjet Technology, just as the underlying Judgment is. See Gaedeke Holdings Ltd. v. Mortgage Consultants Inc., 877 So.2d 824 (Fla. 4th DCA 2004) (holding that while Fla. Stat. § 56.29 does not authorize a court to assess attorneys' fees and costs against an impleaded third party defendant, it does permit the assessment of fees and costs against a defendant (i.e. the original debtor), and because the award of fees and costs against the defendant becomes the a debt of the defendant, a finding of successor liability will permit an indirect award of fees and costs against the impleaded third party defendant, as it is a debt of the predecessor company for which the successor is liable). Indeed, the Gaedeke Court stated:

> Although Gaedeke is not entitled to a direct award of attorneys' fees against the impled defendants… to hold that Gaedeke cannot collect Mortgage Consultants' judgment debt from the fraudulently transferred assets would fly directly in the face of the fraudulent transfers statute. Moreover, it matters not that the judgment debt consists of attorneys' fees.

Id. at 826-27.

Therefore, Murphy & King shall submit an affidavit and supporting documents reflecting the attorneys' fees and costs incurred in this proceeding supplementary and the Court will issue a separate Judgment of Attorneys' Fees and Costs against Defendant Blackjet, Inc.  Because Blackjet Technology is the successor to Blackjet, Inc., it is liable under this fees and costs judgment under mere continuation and de facto merger theories of liability.

## IV.  CONCLUSION

The Court finds that Blackjet Technology is a mere continuation of Blackjet and that a de facto merger occurred between Blackjet and Blackjet Technology.  This Court also concludes that Murphy & King has not alleged and does not need to establish a fraudulent transfer, and that the fact that a UCC foreclosure sale was purportedly undertaken does not preclude a finding of mere continuation or de facto merger.  Murphy & King is therefore entitled to enforce the Judgment in full against Blackjet Technology, and the Court will enter a separate Final Judgment in favor of Murphy & King and against Blackjet Technology for the full amount of the Judgment plus interest to date against Blackjet.  Finally, Murphy & King is entitled to recover its attorneys' fees and costs against Blackjet, which is enforceable against Blackjet Technology for the reasons identified herein, for having to bring and maintain these proceedings supplementary.

Respectfully Submitted,

/s/ Jeffrey B. Pertnoy
**AKERMAN LLP**
Kent B. Frazer, Esquire (FBN 685682)
kent.frazer@akerman.com
Jeffrey B. Pertnoy, Esquire (FBN 91939)
jeffrey.pertnoy@akerman.com
777 S. Flagler Drive,
Suite 1100 West Tower
West Palm Beach, FL 33401
Telephone:  (561) 653-5000
Facsimile:   (561) 659-6313
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 2, 2016, I filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing:

Blackjet, Inc.
c/o Dean Rotchin, President
1675 Palm Beach Lakes Blvd., Suite 1
West Palm Beach, FL 33401
*By U.S. Mail*

Timothy P. O'Neill, Esquire
COHEN, NORRIS, WOLMER,
  RAY, TELEPMAN & COHEN
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408
jab@fcohenlaw.com
tpo@fcohenlaw.com
*Attorneys for Blackjet Technology*

                                               /s/ Jeffrey B. Pertnoy
                                               Jeffrey B. Pertnoy, Esquire (FBN 91939)