UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO:  13-cv-80280-CIV-HURLEY/HOPKINS

MURPHY & KING, PROFESSIONAL
CORPORATION, a Massachusetts
Professional Corporation,

      Plaintiff,

v.

BLACKJET, INC., a Delaware Corporation,
successor by merger to GREEN JETS, INC.,
a Florida Corporation,
      Defendants,
v.

BLACKJET TECHNOLOGY, INC. a Delaware
 Corporation,
      Impleader Defendant.

_____/

## BLACKJET TECHNOLOGY, INC PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**BLACKJET TECHNOLOGY, INC** ("TECH") through its undersigned counsel, hereby submits its Proposed Findings of Fact And Conclusions of Law and requests that the Court adopt the same after the trial of this matter.

### I. INTRODUCTION

This case involves Murphy & King's efforts to collect on a final judgment ("Judgment") entered by this Court against Defendant Blackjet, Inc. ("Blackjet") on January 27, 2014. As set forth in its Impleader Complaint, Murphy & King claims that

Third Party Defendant Blackjet Technology, Inc. ("Blackjet Technology") is liable to Murphy & King for the full amount of the Judgment under successor liability theories of (1) mere continuation and (2) de facto merger.

This cause came before the Court during a non-jury trial in West Palm Beach, Florida, on_____ (the "Bench Trial"). The Court has considered the testimony presented, the exhibits entered into evidence, deposition transcripts submitted by the parties, and the argument of the parties. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure the Court makes the following findings of fact and conclusions of law. If any finding of fact is later deemed to be a conclusion of law it is hereby designated as such. Similarly, if any conclusion of law is later deemed to be a finding of fact, it is hereby designated as such.

## II. FINDINGS OF FACT

1. On January 27, 2014, this Court entered a Final Judgment in the amount of $376,981.51 (the "Judgment") against Blackjet.

2. On April 9, 2015, a Writ of Execution was issued in favor of Murphy & King in an effort to collect on the Judgment.

3. The Writ of Execution remains unsatisfied and is valid and outstanding.

4. The entire amount of the Judgment remains unsatisfied, plus accrued and accruing interest.

5. On April 27, 2009, Haysjet Holdings, LLC ("Haysjet") made a loan to Blackjet's predecessor, Green Jets Incorporated ("Green Jets") in the amount of $500,000.00 (the "Loan").

COHEN NORRIS
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

6. The Loan was evidenced by a Loan and Security Agreement as well as a UCC filing statement recorded on April 29, 2009

7. Haysjet is owned, controlled and operated by Stephen Hays ("Hays"), the sole managing member of Haysjet.

Pursuant to the Loan and Security Agreement, Haysjet held a security interest in all of Green Jets' assets as collateral for the Loan (the "Assets").

8. On January 20, 2010, Haysjet and Green Jets entered into a Loan Modification Agreement (the "First Modification"): whereby (i) the loan amount was increased to $600,000.00; and (ii) Haysjet was given an extra 5% ownership interest in Green Jets in exchange for the additional $100,000.00.

9. On February 29, 2012, Haysjet and Green Jets entered into another Loan Modification Agreement (the "Second Modification").

10. The Second Modification (i) extended the maturity date of the loan from December 31, 2010 to March 31, 2014; and (ii) required that Haysjet place Green Jets in default under any provision of the loan prior to March 31, 2014 unless Green Jets failed to raise the requisite capital, in which case the agreement would be deemed null and void.

11. Green Jets merged with and into Blackjet in March 2013.

12. On September 16, 2013, Hays, as the managing member of Haysjet, sent a letter to Blackjet and Rotchin, the President of Blackjet, declaring the loan in default due to alleged inability of Blackjet to pay its debts as they became due and potential insolvency.

13. The Haysjet default letter stated that the default could be cured by Blackjet raising $500,000.00 in four (4) days, by September 20, 2013; otherwise, Haysjet would avail itself off remedies set forth in the loan documents.

14. Two months after sending the Haysjet default letter, Haysjet filed a second UCC Financing Statement on November 14, 2013, updating its lien to recognize that BlackJet Inc, was the new entity after merger with GreenJets.

15. On March 4, 2014, Haysjet conducted a public sale of the Blackjet Assets securing the Loan.

16. The public sale took place at Haysjet's attorneys' office, Robert Barron Esq. in Fort Lauderdale on March 4, 2014.

17. The Assets sold at the public sale were acquired by Haysjet.

18. The Court finds that the assets of BlackJet Incorporated are exempt assets for purposes of Florida §726.102 as this section defines an asset as: (2) "Asset" means property of a debtor, but the term does not include: (a) Property to the extent it is encumbered by a valid lien. It is not disputed in this instance that all of the property at issue was encumbered by a valid lien held by HaysJet. As such it does not fall within the fraudulent transfer statute.

### III. CONCLUSIONS OF LAW

Based on the foregoing findings of fact, this Court concludes that there is no basis to find liability for TECH on the basis of defacto merger or mere continuation. A fraudulent transfer of assets is a lynchpin to finding liability in supplementary proceedings under Fla. Stat 56.29.

COHEN NORRIS
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

In *Munim, M.D. v. Azar, M.D.*, 648 So.2d 145, 154 (Fla. 4th DCA 1994) for the proposition that they are entitled to a presumption of fraudulent transfer. A presumption of fraud under section 726.106 is created, "by establishing a prima facie case that is unrebutted, or by demonstrating actual fraudulent intent." *Munim,* 648 So.2d at 153. In fact, *Munim* recognizes the key question for this court, "The question on the issue of fraudulent transfer is whether Munim, P.A. transferred its assets to Pulmonary Associates without consideration." *Id.* Here, the prima facie case is rebutted, as the transfer of assets from BLACKJET, INC. to HaysJet does not offend Fla. Stat. 726. The transfer was as a result of a financing agreement, a valid prior lien secured by a proper UCC filing, and a public auction of the assets for valid consideration. As such, there is no possible presumption of fraud.

In 2002 Florida's Fourth District Court of Appeals enunciated the same principle as: "a transfer is fraudulent, without regard to intent, when two elements are met: (1) there is a transfer without consideration, and (2) the debtor either was insolvent at the time, or was made insolvent as a result of the transaction." *Nationsbank, N.A., v. Coastal Utilities, Inc.*, 814 So.2d 1227, n.1 (Fla. 4th DCA 2002). The evidence fails to address or explain how prong one of the *Nationsbank* test is met. One such case that distinguishes *Munim* is *Mason v. E. Speer & Assocs., Inc*., 846 So.2d 529, 534 (Fla. 4th DCA 2003) and is instructive in this instance, "While all of these facts are essentially undisputed, the instant case is distinguishable from *Munim* based on the "assets" that ESA Georgia allegedly transferred to ESA Florida." In *Speer,* the only connection between the companies was the owner of the company. Further, neither corporation had any real

COHEN NORRIS
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

identifiable equipment. The nature of the services performed in *Speer* did not require any specific equipment or other assets. The assets at issue in *Speer* were personal service contracts that had ended or were otherwise of no value. Here, all of the assets were subject to a lien by HaysJet. See Exhibit C, page 43 line 20.) *See also Kernel Records Oy v. Mosley,* 2010 WL 2812565, *8 (S.D. Fla. 2010)(*quoting Mason,* 846 So.2d 529 at 534; "although the court found that "there [was] sufficient evidence that [defendant] improperly converted corporate property to his own use on more than occasion," it nonetheless held that the "[plaintiff] simply did not carry his burden in establishing that these transactions were made with a deliberate intent to mislead creditors")).

In *Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc*., 688 F. Supp 1516, 1521 (S.D. Fla. 1988) the Court found that "In this case, all of Allied's assets including good will, business, leases, and employees, as well as the tangible assets were transferred to United without consideration. As sole shareholder, Cargill Boyd is the equitable owner of United's assets although he contributed no personal funds to the corporation." Here, unlike the cases cited above the assets were subject to a valid secured loan and the assets were transferred for monies previously paid. (See Hays Depo 106-1 at page 8 line 22 and page 15 line 18-22.)

Fraud is not to be imputed to an honest creditor who is preferred by a failing debtor as against another creditor. *McKeown v. Coogler,* 18 Fla. 866 (1882). In *Miles v. Katz*, 405 So.2d 750 (1981) the Court found that Debtor's execution of security interest to secure debt owed to its attorney for past legal services was not fraudulent as to other

creditors even though made three days after initiation of suit for unpaid salaries, and where the secured fund was insufficient to satisfy antecedent debt.

*In Mitutoyo Am. Corp. v. Suncoast Precision, Inc.,* No. 8:08-mc-36-T-TBM, 2011 U.S. Dist. LEXIS 77543 (M.D. Fla. July 18, 2011) the Court explored a transfer which is akin to the transfer in the instant case.

> it is not fraudulent to give the funds to some but not all existing creditors, even though the effect might be to injure or prejudice an existing creditor who was not chosen to receive the debtor's largesse. These so-called preferential transfers are not deemed fraudulent even though their natural effect is to hinder or delay the non-preferred creditors." *Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So.2d 626, 629 (Fla.Dist.Ct.App.1988) (citations omitted); see also *In re Leneve*, 341 B.R. 53, 61 (Bankr.S.D.Fla.2006) ("repaying one creditor at the expense of others may not be nice but it does not automatically provide conclusive evidence of fraudulent intent). Thus, this factor does not provide a basis for holding Majestic liable for the Suncoast debt to Plaintiff.

### IV. CONCLUSION

The Court finds that Blackjet Technology is not a mere continuation of Blackjet and that a de facto merger did not occur between Blackjet and Blackjet Technology. This Court also concludes that Murphy & King has not alleged and cannot establish a fraudulent transfer, and that the fact that a UCC foreclosure sale was undertaken precludes a finding of mere continuation or de facto merger. Murphy & King is therefore not entitled to enforce the Judgment in full against Blackjet Technology, and the Court will enter a separate Final Judgment whereby Murphy & King shall go hence without day.

Finally, Murphy & King is not entitled to recover its attorneys' fees and costs against TECH who is an impleader defendant.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of May, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document was served this day on all counsel of record as noted on the attached counsel list either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic filing.

        COHEN, NORRIS, WOLMER, RAY,
          TELEPMAN & COHEN
        Attorneys for Defendant
        712 U.S. Highway 1, Suite 400
        North Palm Beach, FL 33408
        (561) 844-3600
        (561) 842-4104 (fax)
        jab@fcohenlaw.com
        tpo@fcohenlaw.com

        By: s/_Timothy P. O'Neill_
        Jonathan A. Berkowitz, Esquire
        Fla. Bar No. 038946
        Timothy P. O'Neill, Esquire
        Fla. Bar No. 130877

**COUNSEL LIST:**

Kent B. Frazer, Esquire
Jeffrey B. Pertnoy, Esquire
Akerman Senterfitt
Attorneys for Plaintiff
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 653-5000; Fax: (561) 659-6313
Email: kent.frazer@akerman.com
Email: Jeffrey.pertnoy@akerman.com
_____/

Jonathan A. Berkowitz, Esquire

Timothy P. O'Neill, Esquire
COHEN, NORRIS, WOLMER, RAY, TELEPMAN & COHEN
Attorneys for Defendant
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408
Telephone: (561) 844-3600; Fax: (561) 842-4104 (fax)
Email: jab@fcohenlaw.com
Email: tpo@fcohenlaw.com