UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80280-CIV-HURLEY

MURPHY & KING, PROFESSIONAL
CORPORATION, a Massachusetts
Professional Corporation,

      **Plaintiff,**

v.

BLACKJET, INC., a Delaware Corporation,
successor by merger to GREEN JETS, INC.,
a Florida Corporation,

      **Defendant.**

_____/

BLACKJET TECHNOLOGY, INC.,

      **Third-Party Impleader Defendant.**

_____/

## MEMORANDUM OPINION

**THIS CAUSE** involves postjudgment proceedings supplementary initiated by plaintiff, Murphy & King, a Professional Association ("Murphy & King") against the third-party impleader defendant, BlackJet Technology Inc. ("BlackJet Technology") in effort to collect on a final judgment previously entered against the defendant and original judgment debtor, BlackJet, Inc. ("BlackJet").

## I.      Procedural History

On January 27, 2014, this Court entered a Final Judgment in the amount of $376,981.51 ("Judgment") against BlackJet, Inc. ("BlackJet") [DE 37]. This liability arose out of an unpaid bill for legal services rendered by the Plaintiff law firm, Murphy & King, to the BlackJet's corporate predecessor, Green Jets, Inc., in certain intellectual property litigation originally filed

in the Eastern District of Virginia and later transferred to the Southern District of Florida. *Patent Licensing and Investment Co., LLC v. Green Jets, Inc.*, Case No. 11-80689-CIV-MARRA (S.D. Fla.). On May 9, 2012, that lawsuit was dismissed without prejudice for lack of subject matter jurisdiction on the basis of a covenant not to sue [Case No. 11-60689-CIV-MARRA; DE 103].

In the instant lawsuit, BlackJet (as successor by merger to Green Jets) initially contested its liability for the Murphy & King legal bill on the ground that the parties had earlier reached "general agreement" that Green Jets would pay a "greatly reduced" fee for Murphy & King's legal services, and only then when it had cash flow from operations, as opposed to investor funding, a contingency which BlackJet claimed never occurred [DE 25]. BlackJet did not file any response in opposition to Plaintiff's motion for summary judgment in this suit, however, and in January, 2014, the Court ultimately entered final summary judgment on the merits in favor of Murphy & King for the full amount claimed [DE 35].

On April 9, 2015, a Writ of Execution was issued in favor of Murphy & King in an effort to collect on the Judgment [DE 53]. The Writ of Execution remains unsatisfied and is valid and outstanding.

On May 26, 2015, Murphy & King was granted leave to initiate proceedings supplementary in aid of execution and to implead a third party, BlackJet Technology, Inc. ("BlackJet Technology"), in an effort to collect on its judgment [DE 57]. Accordingly, on October 26, 2015, Murphy & King filed its Impleader Complaint against BlackJet Technology, asserting its liability on the underlying Judgment as the "mere continuation" of BlackJet, the original judgment debtor, or alternatively, as the successor by *de facto* merger to BlackJet [DE 68].

BlackJet Technology moved to dismiss the Impleader Complaint for lack of subject matter jurisdiction, contending that Florida law governing  proceedings supplementary does not permit a request for relief against a third party based on anything other than fraudulent transfer, [1] a theory not advanced in this case [DE 90].  The Court denied the motion, observing that the Florida statute governing proceedings supplementary permits, but does not require, a judgment creditor to allege fraudulent transfer in order to implead a third party defendant.  *See Sanchez v. Renda Broadcasting Corp.*, 127 So.3d 627 (Fla. 5th DCA 2013) (lessor's allegations that lessee entered into a lease when it had no assets to pay rent, and that its sole shareholder used an undercapitalized shell company for his personal benefit were a proper basis for use of proceedings supplementary impleading lessee's sole shareholder, even without allegations of fraudulent transfer, since allegations related to improper conduct by lessee and shareholder); *Ocala Breeders' Sales Co. v. Hialeah, Inc*., 735 So.2d 542, 543-44 (Fla. 3d DCA 1999) (reversing order denying judgment creditor's request to use proceedings supplementary to implead parent corporation and pierce corporate veil, where judgment debtor was subsidiary corporation that had no assets or bank account and had never been capitalized, finding that judgment debtor was "mere instrumentality" of parent corporation and that it fraudulently misled judgment creditor  by entering into lease even though it had no ability to fulfill its obligations under that contract).  *Compare Rashdan v. Sheikh*, 706 So.2d 357 (Fla. 4th DCA 1998) (reversing judgment entered against impleaded defendant due to "absence of any allegations or evidence of fraud, fraudulent transfer *or other improper conduct* on the part of either [the impleaded defendant] or his professional association [the judgment debtor]" (emphasis added)).

---

[1] Section 56.29(5), Fla. Stat. (2015) provides in relevant part:

The court may entertain claims concerning the judgment debtor's assets brought  under chapter 726 [fraudulent transfer statute] and enter any order or judgment including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property.

At the outset of trial, BlackJet Technology renewed its objections to the Court's subject matter jurisdiction under Section 56.29, Fla. Stat., and the Court again rejected the objections. In this case, just as in *Sanchez* and *Ocala Breeders*, Murphy & King alleged improper conduct by the judgment debtor (BlackJet) and a third party. It alleged that BlackJet orchestrated a premature default on a loan from a senior lender, Haysjet Holdings LLC – a holding company owned and controlled by an individual who also served as a director of BlackJet – in order to accomplish a transfer of BlackJet's assets to a reconstituted version of itself, "BlackJet Technology." The aim was to maintain BlackJet's private airline charter booking business as a going concern with the potential for future profits, while shedding its debt obligations to unsecured creditors, such as Murphy & King. The Court found these allegations sufficient to suggest "other improper conduct," thereby justifying the use of proceedings supplementary to implead a third-party defendant under §56.29, Fla. Stat. (2015).

Having considered the testimony presented at trial, the exhibits entered into evidence, deposition transcripts submitted by the parties, and the argument of the parties, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court now makes the following findings of fact and conclusions of law.

## II.   <u>FINDINGS OF FACT</u>

1.     On April 27, 2009, Haysjet Holdings, LLC ("Haysjet"), made a loan to BlackJet's predecessor, Green Jets Inc. ("Green Jets") in the amount of $500,000.00 (the "Loan"). The Loan was evidenced by a Loan and Security Agreement, as well as a UCC filing statement recorded on April 29, 2009.

2.     Haysjet is owned, controlled and operated by Stephen Hays ("Hays"), who is the sole managing member of Haysjet.

3.      At all material times, Hays was also a director of Green Jets and BlackJet, and is currently a director of BlackJet Technology.

4.      Pursuant to the April 29, 2009 Loan and Security Agreement, Haysjet held a security interest in all of Green Jets' assets as collateral for the Loan (the "Assets").

5.      On January 20, 2010, Haysjet and Green Jets entered into a Loan Modification Agreement ("First Modification"), under which (i) the loan amount was increased to $600,000.00, and (ii) Haysjet was given a 5% ownership interest in Green Jets in exchange for the increased credit.

6.      On February 29, 2012, Haysjet and Green Jets entered into a second Loan Modification Agreement ("Second Modification").  The Second Modification extended the maturity date of the loan from December 31, 2010 to March 31, 2014.  This document contains Haysjet's affirmation that "he (sic) will not place Borrower in default under any provision of the Loan for any reason prior to March 31, 2014," while further providing that the Second Modification "shall be null and void"   in the event "new equity in the amount of not less than $1 million is not invested in Borrower by May 31, 2012" [Impleader Defendant's Exhibit No. 5].

7.      Green Jets merged into BlackJet, Inc. in March 2013.

8.      On March 19, 2013, Murphy & King filed the instant action against BlackJet, seeking compensation for legal services provided to its corporate predecessor, Green Jets, in connection with certain intellectual property litigation initiated in the Eastern District of Virginia and later transferred to the Southern District of Florida.

9.      On August 7, 2013, Dean Rotchin, the President of BlackJet, sent an email to Hays stating "It appears as if there's no way to default until March 31, 2014." This email was

copied to Joe Grimes, BlackJet's Chief Financial Officer, and included a message directed to him: "Joe – are we sure we received the full $1M by May 31? If not, I think there's a door open."

10.     On September 13, 2013, Rotchin sent another email to Hays asking for issuance of a default notice, "Can we have the default letter with next Thursday as the final date to have $500k? ASAP."  Hays initially hesitated, stating, "Probably best I pass on this call unless you think good idea  ... Bit of conflict."

11.     However, on September 16, 2013, Hays, acting as managing member of Haysjet, sent a formal notice of default to BlackJet due to the stated  "inability [of Borrower] to pay its debts as they became due and Borrower's potential insolvency," which Hays described as "Events of Default" under the Loan Agreement.  The notice provided BlackJet with four days to cure by raising a minimum of $500,000 in new equity capital.

12.     In deposition testimony introduced at trial, Hays testified that he had no knowledge of any specific debts BlackJet could not pay at the time he sent the default letter, and that the reference to BlackJet's financial issues in this notice was derived from his discussions with BlackJet board members, Rotchin and Grimes.   Hays also testified that he had no knowledge of BlackJet's alleged failure to meet its capital contribution requirements, and did not default BlackJet on that basis.

13.     On November 4, 2013, Haysjet filed a second UCC Financing Statement, updating its lien to identify BlackJet as the debtor.

14.     On January 27, 2014, this Court entered Final Summary Judgment in favor of Murphy & King and against BlackJet in the full amount of its claim.

15.     On March 4, 2014, Haysjet conducted a public sale of BlackJet assets ["Assets"] at the offices of Haysjet's attorney, Richard Barron, in Fort Lauderdale. Haysjet acquired the Assets at the sale after a single credit bid of $5,000.00.

16.     After the sale, Haysjet allowed the Assets to remain in possession and control of BlackJet, which continued to use all of the BlackJet Assets, including BlackJet's intellectual property, website and mobile application.

17.     BlackJet Technology was formed on March 31, 2014.

18.     On April 1, 2014, BlackJet Technology and Haysjet entered into a Formation and Funding Agreement ("Funding Agreement").  The Funding Agreement provided that BlackJet Technology was formed to "implement a business plan based on the BlackJet business model." The Funding Agreement permitted BlackJet Technology to continue to use Blackjet's website (www.BlackJet.com); to "leverag[e] the BlackJet assets and the talent of the principals of BlackJet," along with the intellectual property of BlackJet to run BlackJet Technology, and to use the Assets pursuant to a License Agreement.

19.      On April 1, 2014, Haysjet and BlackJet Technology also executed a License Agreement, pursuant to which BlackJet Technology obtained a royalty-free license to use the BlackJet Assets for one year, with the option to take free and clear title to the Assets if certain conditions were met. Under the License Agreement, "Assets" were defined to include "all the assets of BlackJet" acquired by Haysjet, including "certain physical assets, software, trademark, internet domains, as well as two patent applications filed with the USPTO, accounts and other assets," i.e. the BlackJet Assets.  In exchange for the license, Haysjet acquired a one-third ownership interest in BlackJet Technology.

20.     BlackJet ceased operations on April 21, 2014.

21.     Since April 1, 2014, BlackJet Technology has possessed, controlled and used BlackJet's Assets for the purpose of continuing the BlackJet business.

22.     BlackJet Technology initially operated in the same physical space as that previously occupied by BlackJet.  It later moved to a different office suite in the same building. BlackJet Technology performs under the same lease as that previously assumed by BlackJet. BlackJet Technology operates through the BlackJet website, www.BlackJet.com, and BlackJet mobile application, and uses BlackJet's customer lists.   It also uses the same mailing address and business addresses. The books and records of BlackJet are physically located at BlackJet Technology's principal place of business.

23.     BlackJet Technology conducts the same business operation as BlackJet and essentially follows the same business model.  BlackJet generated revenue from aircraft charters, and BlackJet Technology generates revenue from aircraft charters.  BlackJet generated revenue from reserving private charter airline seats (through an online booking system) for its clients, and BlackJet Technology generates revenue from reserving private charter airline seats (through the same seat reservation system).

24.     Although there is not a complete overlap of shareholders, BlackJet and BlackJet Technology have a common identity of primary shareholders, officers and directors.  Dean Rotchin, Joseph Grimes, and Stephen Hays were all officers and directors of Green Jets and BlackJet, and are now officers and directors of BlackJet Technology.

### III.  <u>CONCLUSIONS OF LAW</u>

**A.     Corporate Successor Liability Doctrine**

Florida law generally does not impose liabilities of a predecessor corporation on a successor corporation unless (1) the successor expressly or impliedly assumes obligations of the

predecessor; (2) the transaction is a *de facto* merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. *Bernard v. Kee Mfg. Co. Inc.,* 409 So. 2d 1047, 1049 (Fla. 1982). *See also Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451 (11th Cir. 1985). The imposition of successor liability, as the exception to the general rule, is based on the equitable principle that no corporation should be permitted to commit a tort or breach of contract and avoid liability through a corporate transformation in form only. *Amjad Munim, M.D., P.A. v. Azar, M.D.,* 648 So. 2d 145, 154 (Fla. 4th DCA 1995). In this case, Murphy & King invoke only the second and third theories of corporate successor liability.

### B.    BlackJet Technology is the Mere Continuation of BlackJet, Inc.

The concept of continuation of business arises where a successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir. ) (en banc), *reh'g denied,* 765 F.2d 154 (1985). The "purchasing corporation is merely a 'new hat' for the seller, with the same or similar entity or ownership." *Id.* The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporation, that is, a continuation of the corporate entity of the seller corporation. *Id.* at 1458-1459, citing *Travis v Harris Corp,* 565 F.2d 443, 447 (7th Cir. 1977). The change is in form, but not in substance. Put another way, "[t]he bottom line question is whether each entity has run its own race, or, whether there has been a relay-style passing of the baton from one to the other." *Azar* at 154, citing *300 Pine Island Assoc. v. Steven L. Cohen & Assoc.,* 547 So.2d 255 (Fla. 4th DCA 1989).

In this case, approximately five months after the lawsuit was filed, BlackJet's directors and officers prompted a premature foreclosure on the Haysjet Loan in order to orchestrate a

transfer of its assets to a reconstituted version of itself and to continue its business under a new name with a potential for increased profits, while shedding its obligations to unsecured creditors, such as Murphy & King.  The email exchange between Rotchin and Hays which immediately preceded and precipitated the default notice demonstrates that Rotchin understood he needed a suggestion of insolvency, and more precisely, a suggested  inability to meet  capital investment requirements in place under the Second Modification.  The email to Hays acknowledging the earliest foreclosure date of March 31, 2014, contains a side note, addressed to director Joe Grimes, inquiring if Grimes  was "sure" that the company had raised $1 million in revenues by May 31st (2012), and  adding – hopefully -  "If not, I think there's a door open." Presumably, the "door" Rotchin refers to is a basis for triggering a premature default, based on a failure to meet capital investment requirements per the terms of the modification document.

While Hays initially was hesitant to call in the Loan -- raising the possibility of a conflict of interest between his role as Haysjet's managing member and his role as director and shareholder in BlackJet – he ultimately acceded to Rotchin's request, declared the Haysjet Loan in default and initiated UCC foreclosure proceedings on BlackJet's Assets.  Next, Hays acquired the Assets, on behalf of Haysjet, and instead of applying the proceeds of sale toward the outstanding BlackJet debt, he allowed BlackJet to remain in possession and control of the Assets in order to continue its business operations.  At the same time, BlackJet's officers and directors caused BlackJet to shut down and formed BlackJet Technology in order to continue to operate BlackJet's business under a new name, occupying the same offices and using the same assets, website, mobile application, customer lists, and employees used by BlackJet. BlackJet and BlackJet Technology also enjoyed substantial overlap in officers, directors and primary shareholders.

Effectively, BlackJet Technology is the reincarnation of BlackJet, "dressed up with a new name and controlled by the same individual[s]." *Azar, supra.*  Given the overwhelming evidence of continuity of the corporate entity in all material aspects, BlackJet Technology is appropriately found to be a "mere continuation" of BlackJet, and as such is liable for its debts.  *Azar,* 648 So. 2d at 154.  *See also  Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc.,* 688 F. Supp. 1516, 1521 (S.D. Fla. 1988); *In re Aqua Clear Tech., Inc.,* 361 B.R. 567, 578 (S.D. Fla. 2007);  *Global One Fin., Inc. v. Intermed Servs., P.A.*, 2015 WL 1737710, at * 4-5 (S.D. Fla. April 16, 2015).

**C.      BlackJet Technology is Successor by *De Facto* Merger to BlackJet**

A *de facto* merger occurs where one entity is absorbed by another without formal compliance with the statutory requirements for a merger.  *Azar*, 648 So. 2d at 153.  To determine if a *de facto* merger has occurred, the finder of fact looks at factors reasonably indicative of commonality or distinctiveness.  *Lab Corp. of Am. v. Prof. Recovery Network,* 813 So. 2d 266, 270 (Fla. 5th DCA 2002) (determination of *de facto* merger hinges on whether there has been a change in form, but not in substance, in the corporate identity).

In determining whether  to characterize an asset sale, or  transfer, as a *de facto* merger, courts consider the following indicia of continuity:  (1) whether there is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets and general business operations; (2) whether there is a continuity of shareholders, accomplished by paying for the acquired corporation with shares of stock;  (3) whether there is a dissolution of the  seller corporation, and (4) whether the purchasing corporation assumes the  obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations. *Azar* at 153-154. All of these events, however,  need not  occur at the same time.  *Id.,* citing *Knapp v. North  American Rockwell Corp.,*506 F.2d 361 (3d Cir. 1974), *cert. den*., 421 U.S. 965 (1975). The rationale for imposition of successor liability

in these circumstances is grounded on the notion that no corporation should be permitted to commit a tort or breach of contract and avoid liability through corporate transformations in form only. *Id.*

Applying these criteria here, the Court concludes that a *de facto* merger occurred between BlackJet and BlackJet Technology. The undisputed evidence shows a continuation of the BlackJet business operation, with continuity in management, officers and directors, personnel, physical location, web presence, and general business operations. Although there was not an actual transfer or purchase of assets, for all practical purposes, an asset transfer was effected via the mechanism of a "license" agreement between Haysjet, a senior lender who acquired title to the assets at a foreclosure sale, and the BlackJet Technology, which was granted a royalty-free license to use and possess the assets, as well as a future option to purchase them. *See Glausier v A+ Nursetemps, Inc.*, 2015 WL 2020332 *5 (M.D. Fla. 2015) (noting lack of clarity on issue of asset transfer requirement due to *dicta* in certain successorship decisions). Second, although there was not complete continuity of shareholders resulting from the purchasing corporation paying for the acquired assets with shares of its own stock, there was some continuation of the stockholders' ownership interests, which is sufficient to satisfy this element. *See Bud Antle, supra* at 1458 ("[a]t the very least, there must be some sort of continuation of the stockholders' ownership interests"). Third, BlackJet ceased operations and dissolved shortly after its assets were acquired by Haysjet and effectively transferred to BlackJet Technology. Fourth, BlackJet Technology assumed the obligations of BlackJet necessary for the uninterrupted continuation of Blackjet's normal business operations: It assumed Blackjet's office lease; it continued to operate BlackJet's business using BlackJet's office equipment, customer lists and other proprietary property, and it leveraged the same management, employees, officers and directors

of BlackJet in effort to maintain the private aircraft charter business of BlackJet as a going concern with the potential for generating future profits. This evidence establishes the existence of a *de facto* merger which renders BlackJet Technology liable for BlackJet's debts, including the underlying Judgment at issue in this case.

### D.      The Foreclosure Sale By Haysjet Does Not Preclude Imposition of Successor Liability

Finally, BlackJet Technology asserts that the UCC foreclosure sale of the BlackJet Assets by a senior lender (Haysjet) precludes a finding of mere continuation or *de facto* merger; that is, it contends that because the assets of the predecessor corporation were encumbered by a valid senior lien, the claims of Murphy & King, an unsecured creditor, cannot be asserted via either theory of successor liability.   This argument overlooks the essential fact that the senior lien of Haysjet, perfected with a UCC financing statement filing, was not impaired by the unsecured claim of Murphy and King *at the time Haysjet foreclosed on the lien.*   Assuming, *arguendo*, the commercial reasonableness of the  UCC foreclosure sale, this translates simply into Haysjet assuming title to the BlackJet Assets free and clear of the claims of unsecured creditors such as Murphy and King.  In a similar vein, had Haysjet sold the assets to a third party, to the extent that the proceeds of the sale were insufficient to satisfy BlackJet's obligation to Haysjet, Murphy & King, as unsecured creditor, would not have been able to recover its outstanding judgment debt because, as a general proposition, the liabilities of a predecessor corporation are not imposed on the successor corporation that purchases its assets.

Haysjet, however, opted to leave possession and use of the Assets with BlackJet, in effort to further the parties' joint interest  in continuing the business of BlackJet, and opted to later transfer use and possession of the Assets to a successor corporation, BlackJet Technology, under

the machination of a "licensing agreement" which included an option for free and clear transfer of title to the new company if certain conditions are satisfied.

By transferring use and possession of the assets to a reconstituted version of the original debtor, in an effort to maintain the debtor's private aircraft charter booking business as a going concern, Haysjet assumed the risk of a successor liability inquiry, which has in fact materialized. This does not result in frustration of reasonable commercial expectations protected by the UCC, but rather, preserves the equitable principles embodied in the rules of successor liability. *Ed Peters Jewelry Co v. C & J Jewelry Co.,* 12 F.3d 253 (1st Cir. 1997) (recognizing that foreclosure process does not preempt successor liability inquiry).   Haysjet assumed this risk by effectively transferring the BlackJet Assets back to the borrower, and then to a successor corporation, in order to facilitate the continuation of BlackJet's business under a new name.

While there are no Florida authorities directly on point, other jurisdictions recognize that a UCC foreclosure sale affords an acquiring corporation no automatic exemption from successor liability. *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 267 (1st Cir. 1997) (although foreclosure by a senior lienor often wipes out junior-lienor interests in the same collateral, it does not discharge the debtor's underlying obligation to junior lien creditors; by its nature, the foreclosure process cannot preempt a successor liability inquiry); *Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc.,* 186 B.R. 603, 609 (E.D. Pa. 1994) (imposing corporate successor liability under mere continuation theory where predecessor company defaulted under an agreement with its senior secured lender, lender foreclosed on all of the predecessor's assets, and  lender and predecessor then engineered and financed an asset purchase by a successor corporation whose only shareholders were the children of the sole shareholder of the predecessor corporation; foreclosure sale was not commercially reasonable, and thus

successor corporation was not protected from liability for debt under UCC); *Milliken & Company v. Duro Textiles, LLC*, 451 Mass. 547, 887 N.E.2d 244 (Mass. 2008) (affirming imposition of successor corporate liability after UCC foreclosure sale of original company's assets by senior lender, who also had a stake in successor company, where successor operated from the same location, performed same operations, offered same services, and employed same persons as predecessor).

To hold otherwise, and allow a secured creditor with an overlapping interest and control in the successor corporation to work in tandem with its predecessor corporation and use the mechanism of a foreclosure sale to eliminate the claims of unsecured creditors --without losing any control of the potential future profitability of the business -- would be to sanction "precisely the kind of harm to innocent creditors that the successor liability doctrine was designed to prevent." *Duro Textiles* at 560.

E.    **Murphy & King Is Entitled To An Award Of Attorney's Fees And Costs And Prejudgment Interest**

Pursuant to § 56.29 (11),[2] Florida Statutes, Murphy & King is entitled to recover against BlackJet the reasonable attorneys' fees and costs incurred in bringing these meritorious proceedings supplementary. The fee award is not directly taxable against BlackJet Technology as the impled, non-debtor defendant. *Rosenfeld v TPI International Airways*, 630 So.2d 1167 (Fla. 4th DCA 1993).

However, because BlackJet Technology has been found to be the mere continuation of and successor by *de facto* merger to BlackJet, BlackJet Technology is *indirectly* liable for

---

[2] Section 56.29(11), Fla. Stat. (2015) provides:

Costs for proceedings supplementary shall be taxed against the defendant as well as all other incidental costs determined to be reasonable and just by the court including, but no limited to, docketing the execution, sheriff's service fees and court reporter's fees. Reasonable attorney's fees may be taxed against the defendant.

Blackjet's attorney fee and cost liability under successor liability precepts in the same manner as the underlying Judgment is enforceable against it.   *Compare Gaedeke Holdings, Ltd. v. Mortgage Consultants, Inc.,* 877 So.2d 824, 826-27 (Fla. 4th DCA 2004) (plaintiff was not entitled to a direct award of attorneys' fees against impled defendants, but trial court should have applied fraudulently  transferred assets toward satisfaction of the attorney fee award).

The amount of the fee award shall be determined by separate order and judgment of the Court.  Plaintiff shall have ten (10) days to submit a supplemental motion for fees and costs, with supporting affidavits and other proofs as appropriate; Defendant and Third-Party Impleader Defendant shall have five (5) days from service of the motion to file their opposition, if any, and the Plaintiff shall have three (3) days within which to submit its reply.

## IV.  <u>CONCLUSION</u>

Based on the foregoing, the Court finds that BlackJet Technology is the mere continuation of BlackJet, and that a *de facto* merger occurred between BlackJet and BlackJet Technology.  Murphy & King is accordingly entitled to enforce the Final Judgment previously entered against BlackJet against BlackJet Technology.

Further, Murphy & King is entitled to recover attorneys' fees and costs incurred in prosecution of these proceedings supplementary against BlackJet, and this liability is properly enforced BlackJet Technology  under *de facto* merger or mere continuation theories of successor liability.

It is accordingly **ORDERED AND ADJUDGED**:

1.    As the "mere continuation" of BlackJet, or as its successor by *de facto* merger, BlackJet Technology is liable for the debts and obligations of BlackJet to Murphy & King, a Professional Corporation, including the Final Judgment previously entered in this action.

2.    By separate order, the Court shall enter judgment in favor of Murphy & King and against BlackJet Technology in the amount of $376,981.51, plus prejudgment interest.

3. As the "mere continuation" of BlackJet, or as its successor by *de facto* merger, BlackJet Technology is also liable for the attorneys' fees and costs taxable against BlackJet in these proceedings supplementary.

4.    The Court reserves jurisdiction to determine the amount of attorney's fees and costs to be taxed against defendant BlackJet, which, in turn, shall be reduced to a separate judgment against BlackJet Technology as the "mere continuation" or successor by *de facto* merger to BlackJet.

**DONE AND SIGNED** in Chambers at West Palm Beach, Florida this 26th day of May, 2016**.**

United States District Judge
Southern District of Florida

cc. all counsel