UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 13-80280-CIV-HURLEY

MURPHY & KING, PROFESSIONAL
CORPORATION, a Massachusetts
Professional Corporation,

    Plaintiff,

v.

BLACKJET, INC., a Delaware Corporation,
successor by merger to GREEN JETS, INC.,
a Florida Corporation,

    Defendant.
_____/

MURPHY & KING, PROFESSIONAL
CORPORATION, a Massachusetts
Professional Corporation,

    Plaintiff in execution,

v.

STEPHEN HAYS; HAYSJET HOLDINGS,
LLC; DEAN ROTCHIN; and JOSEPH
GRIMES,

    Third Party Impleader Defendants.
_____/

**MURPHY & KING'S RESPONSE IN OPPOSITION
TO DEFENDANTS STEPHEN HAYS AND HAYSJET
HOLDINGS, LLC'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Murphy & King, PC ("Murphy & King"), by counsel, files this Response in

Opposition to Defendants Stephen Hays ("Hays") and Haysjet Holdings, LLC's ("Haysjet")

(collectively the "Hays Defendants") Motion for Summary Judgment ("Motion") [ECF No. 172].

{40483697;2}

## SUMMARY OF ARGUMENT

These proceedings supplementary are targeted at the fraud and misconduct of shareholders, directors and officers of Green Jets, Inc. ("Green Jets") and its successors Blackjet, Inc. ("Blackjet") and Blackjet Technology, Inc. ("Blackjet Technology") (collectively, the "Blackjet Entities").

Hays, a director and insider of the Blackjet Entities, formed Haysjet for the sole purpose of investing his personal money in the Blackjet Entities. Hays disguised his insider equity investment as a "loan" purportedly secured by all of the Blackjet Entities' assets. During the pendency of the underlying litigation, Hays and his fellow insiders, Rotchin and Grimes, orchestrated a fraudulent scheme to leave the Blackjet Entities judgment-proof and to protect Hays' investment. This Court made detailed factual findings outlining the scheme. The Hays Defendants seek in their Motion to have this Court disregard its prior findings and find as a matter of law that Haysjet's "loan" was valid and secured by a first lien, and that the lien was properly foreclosed such that the Hays Defendants did not engage in any fraudulent transaction.

The Hays Defendants provide no evidentiary support for the Motion, but rather attach various documents and completely ignore Hays' prior deposition testimony, testimony at trial and this Court's express findings. There are significant material factual issues preventing entry of summary judgment in favor of the Hays Defendants.

The motion should be denied for the following reasons:

1. There are pervasive issues of material fact regarding whether the Haysjet "loan" was a disguised equity investment. The equity investment "loan" by insider Hays was a sham created for the purpose of allowing the Blackjet Entities to avoid the interests of creditors at the

opportune time. Green Jets was undercapitalized at time of the disguised loan and no legitimate lender would have loaned the amount invested by the Hays Defendants.

2. Even if Haysjet did have a valid lien, summary judgment is nevertheless inappropriate because the value of the assets at issue has never been determined. The value of the assets in question was not determined at the time of the wrongful and premature "foreclosure" which is the primary fraudulent transfer at issue here. Nor has Hays provided any evidence of the true value of the assets at the time of the transfer. If the value of the Blackjet assets actually exceeded the amount owed to Haysjet, then Murphy & King would be entitled to recover the surplus in satisfaction of its judgments against the Blackjet Entities. Hays provides no evidence that the purported "foreclosure" sale was properly conducted in a commercially reasonable manner. Absent an appropriate valuation of the Blackjet Assets, summary judgment is not proper.

3. Finally, summary judgment is premature because insufficient discovery has been taken. Here, Murphy & King propounded discovery on the Hays Defendants in October 2016. The Hays Defendants sought significant extensions of time – almost 80 days – to respond to the outstanding discovery and produce responsive documents. The Hays Defendants filed their motion during this time without having completed their discovery obligations. In fact, because of the Hays Defendants' obstructive responses and objections to relevant discovery, Murphy & King plans to file a motion to compel. No depositions have been taken in these proceedings supplementary and the Hays Defendants have not permitted the inspection of the assets that are the subject of the fraudulent transfer claims against the Hays Defendants. Until the Hays Defendants fulfill their discovery obligations, summary judgment is premature and improper.

**I.      COUNTERSTATEMENT OF FACTS**

1-23.   Murphy & King objects and denies the statement of facts set forth by the Hays Defendants in their motion.  Specifically, the Hays Defendants orchestrated and executed a disguised equity investment of Hays' personal funds which was documented to appear like a valid loan so that Hays could protect his equity investment and defraud legitimate creditors of the Blackjet Entities, just like was done to Murphy & King during the underlying litigation that resulted in judgments against the Blackjet Entities.  [Impl. Compl., ECF No. 143 ¶¶ 71, 78, 85, 103, 114].  Even if the Hays Defendants' investment was an actual loan, the Hays Defendants colluded with Hays' fellow insiders of the Blackjet Entities to declare a premature and unsubstantiated default and conduct a commercially unreasonable "foreclosure" of the subject assets leaving the Blackjet Entities judgment-proof.  Murphy & King adds the additional facts below in accordance with S.D. Fla. L. R. 56.1.

24.     Hays was a director of Green Jets, Blackjet and Blackjet Technology, and was therefore an insider of the Blackjet Entities. [ECF No. 128 at ¶ 3; Deposition of Steven Hays, ECF No. 106-1, at 49:2-5].

25.     When Haysjet invested Hays' personal funds disguised as a "loan" to Green Jets, he did so because he believed Green Jets "wanted an equity investment" and Hays disguised the equity investment in the form of a loan because of "the rights that come with being a senior secured lender as opposed to equity is a lower risk." [ECF No. 106-1, at 51:9-18].

26.     Hays was a board member of Green Jets at the time he made the disguised equity "loan" to Green Jets. [ECF No. 106-1, at 52:6-11].

27.     When Haysjet called its disguised equity loan into default, it did so (i) based on Hays' discussions with fellow insiders Dean Rotchin and Joe Grimes, and not on any

independent notice of default; (ii) despite the clear prohibition on declaring default before March 31, 2014 under the purported loan documents; and, (iii) granting a cure period shorter and contrary to what was required by the purported loan document. [ECF No. 106-1, pp. 59-60, pp. 63:20-64:5].

28. On August 7, 2013, Dean Rotchin, the President of BlackJet, sent an email to Hays stating "[i]t appears as if there's no way to default until March 31, 2014." [ECF No. 128, at ¶ 9].

29. On September 13, 2013, Dean Rotchin sent another email to Hays asking for the issuance of a default notice, stating "[c]an we have the default letter with next Thursday as the final date to have $500k? ASAP." Hays initially hesitated, stating, "[p]robably best I pass on this call unless you think good idea ... Bit of conflict." [ECF No. 128, at ¶ 10].

30. Three days later, on September 16, 2013, Hays, acting as managing member of Haysjet, sent a formal notice of default to Blackjet based on the stated "inability [of Borrower, Blackjet] to pay its debts as they became due and Borrower's potential insolvency," which Hays described as "Events of Default" under the Loan Agreement. The notice provided Blackjet with four days to cure by raising a minimum of $500,000 in new equity capital. [ECF No. 128, at ¶ 11].

31. The problem is, Hays had no knowledge of any specific debts BlackJet could not pay at the time he sent the default letter, and that the reference to BlackJet's financial issues in this notice was derived from his discussions with BlackJet board members, Rotchin and Grimes. [ECF No. 128, at ¶ 12].

32. Nor did Hays have any knowledge of BlackJet's alleged failure to meet its capital contribution requirements. [ECF No. 128, at ¶ 12].

33. On March 4, 2014, Haysjet conducted a "public" sale of the Blackjet Assets and acquired the Assets at the sale after a single credit bid of $5,000.00. [ECF No. 128, at ¶ 15; ECF No. 106-1, at 77:3-5].

34. There was no competitive bidding at the "public" foreclosure sale. [*Id.*; ECF No. 106-1, at 79:15-80:2].

35. The Hays Defendants did not obtain an appraisal of the actual value of the Blackjet Assets, either prior to or in connection with the purported foreclosure or at any other time. [ECF No. 106-1, at 77:6-9].

36. The Hays Defendants colluded with fellow Blackjet insiders and principals, Dean Rotchin and Joseph Grimes, to effect the premature and unsubstantiated default letter, despite Hays' conflicts of interest, and proceeded with the improper "foreclosure" sale, leaving the Blackjet Entities judgment-proof. [ECF No. 128, at ¶¶ 9-12, 15; ECF No. 106-1, at 64:15-65:15, 67:14-69:5, 70:22-73:17].

37. On April 1, 2014, Blackjet Technology and Haysjet entered into a Formation and Funding Agreement ("Funding Agreement"). The Funding Agreement provided that Blackjet Technology was formed to "implement a business plan based on the Blackjet business model." The Funding Agreement permitted Blackjet Technology to continue to use Blackjet's website (www.BlackJet.com); to "leverag[e] the Blackjet assets and the talent of the principals of Blackjet," along with the intellectual property of Blackjet to run Blackjet Technology, and to use the Assets pursuant to a License Agreement. [ECF No. 128, at ¶ 18].

38. On April 1, 2014, Haysjet and Blackjet Technology executed a License Agreement, pursuant to which Blackjet Technology obtained a royalty-free license from Haysjet to use the Blackjet Assets for one year, with the option to take free and clear title to the Assets if

certain conditions were met. Under the License Agreement, "Assets" were defined to include "all the assets of Blackjet" acquired by Haysjet, including "certain physical assets, software, trademark, internet domains, as well as two patent applications filed with the USPTO, accounts and other assets," i.e. the Blackjet Assets. In exchange for the license, Haysjet acquired a one-third ownership interest in Blackjet Technology. [ECF No. 128, at ¶ 19].

39. It was Hays' idea to license the Blackjet Assets to Blackjet Technology because the assets had no value "unless someone was running them and managing them as a business." [ECF No. 106-1, at 84:18-85:12].

40. At the time of the license, Hays was a director of Blackjet Technology, and thus, was an insider and on both sides of that transaction. [ECF No. 106-1, at 86:13-19].

41. All of the foregoing results in Hays protecting his initial equity investment by disguising it as a "loan" and thereby defrauding legitimate creditors of the Blackjet Entities like Murphy & King.

42. In reality, because Hays made a disguised equity investment, the Hays Defendants had no lien rights in the Blackjet Entities and Murphy & King is instead the sole creditor of the Blackjet Entities.

## II. MEMORANDUM OF LAW

### A. Summary Judgment Standard

"Summary judgment is proper if 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The party moving for summary judgment bears the initial burden to show there is an absence of genuine issues of material fact such that a trial would be unnecessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  To discharge this burden, the moving party may point out to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.  Summary judgment should be denied when "reasonable minds" might differ on the inferences of the undisputed facts. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982).  When determining if a nonmoving party has met its burden to establish a genuine issue of material fact, the court must stop short of weighing the evidence or making a determination regarding the credibility of the truth of the matter.  *Tipton v. Bergrohr GBMH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1993).

    **B.**     **There Are Issues Of Material Fact Regarding Whether The Hays Defendants Made An Equity Investment Disguised As Loan And Thus Had No Valid Lien On The Blackjet Assets**

The Hays Defendants acknowledge that the validity of the Haysjet lien is central to their defense of these proceedings supplementary. [ECF No. 172, pp. 9-10].  Indeed, the Hays Defendants' entire motion hinges on its argument that "property encumbered by a valid lien is expressly excluded from the definition of an asset, and consequently, the definition of a transfer under [Florida's Uniform Fraudulent Transfer Act]."  *Id.*

However, the record is replete with evidence establishing that Hays simply made an equity investment through Haysjet disguised as a "loan" to protect his investment to the detriment of legitimate creditors of the Blackjet Entities. [ECF No. 106-1, at 51:9-18].  The Eleventh Circuit has held that loans by shareholders to a corporation may be deemed capital contributions where either there was initial undercapitalization or where no other disinterested lender would have extended credit.  *See In re N & D Properties, Inc.*, 799 F.2d 726, 733 (11th Cir. 1986).  The Southern District of Florida has extended this proposition so that non-shareholder loans may also be recharacterized as equity in appropriate circumstances.  *See In re*

*First NLC Financial Services, LLC*, 415 B.R. 874, 880 (Bankr. S.D. Fla. 2009). In the specific context of fraudulent transfers, where an insider's loan to a corporation was not a "bona fide loan," a subsequent transfer of assets in satisfaction of that valueless debt may constitute a fraudulent transfer because the debtor would not be receiving "reasonably equivalent value." *See Turner v. Ramo, LLC*, No. 09-81609-CIV, 2011 WL 541591 at *3 (S.D. Fla. Feb. 8, 2011).

Moreover, it is undisputed that the Hays Defendants have been on both sides of every transaction that has taken place since the initial "loan" to Green Jets in 2009. [*See* ¶¶ 24, 26, 38-40, Statement of Facts in Opposition]. Indeed, Hays was a director of each of the Blackjet Entities while he was also serving as a purported senior lender and, after the fraudulent foreclosure and transfer of the Blackjet Assets, the licensor of the Blackjet Assets back to Blackjet Technology, the last iteration of the Blackjet Entities.

As this Court found in its Memorandum Opinion, Blackjet's directors and officers, which included Hays, "prompted a premature foreclosure on the Haysjet Loan in order to orchestrate a transfer of its assets to a reconstituted version of itself and to continue its business…while shedding its obligations to unsecured creditors, such as Murphy & King." [ECF No. 128, at p. 9-10]. This fraudulent collusion between insiders and blatant self-dealing precludes summary judgment and creates a genuine issue of material fact with respect to whether the Hays Defendants had a "valid lien" on the Blackjet Assets. Clearly, the loan was not negotiated at arms' length, as Hays was a board member and insider of Green Jets when the loan was made. The insider status alone is one of the many disputed issues of fact precluding summary judgment. *See Turner v. Ramo, LLC*, No. 09-81609-CIV, 2011 WL 541591 (S.D. Fla. Feb. 8, 2011) (denying summary judgment and finding genuine issues of material fact with respect to whether certain parties to the transaction were "insiders" under Section 726.102, Florida Statutes, and the

effect of same on the transfers at issue). *See also In re A. Tarricone, Inc.*, 286 B.R. 256, 262-63 (Bankr. S.D.N.Y. 2002) (insider analysis is fact intensive one); *Amjad Munim, M.D. v. Azar,* 648 So. 2d 145, 152 (Fla. 4th DCA 1994) ("[F]raud will be presumed when the transfer occurs between two corporations controlled by the same individuals").

Hays was unquestionably conflicted by operating on both sides of the purported loan and the various modifications, the license agreement, and the formation and funding agreement, all of which furthered the Blackjet Entities' circumvention of their debtor obligations to Murphy & King and preserved Hays' personal equity investment in the Blackjet Entities.

The Hays Defendants argue that the fraudulent activity, collusion, and transfers of assets described herein are not subject to or governed by Florida's fraudulent transfer laws because property encumbered by a "valid lien" is not an "asset" under the statute which can be the subject of such a transfer. [ECF No. 172, p. 9]. Therefore, the Hays Defendants' argument is premised on the validity of lien granted by Green Jets, as they readily admit in their motion. [ECF No. 172, p. 11-12]. This argument fails because there is ample record evidence to create a genuine issue of material fact as to whether the original loan from Haysjet to Green Jets was a sham, the result of collusion, and an equity investment merely disguised as a loan, which would likewise create a disputed issue of fact regarding the validity of the liens. *See Turner v. Ramo, LLC*, No. 09-81609-CIV, 2011 WL 541591,*4 n. 3. (S.D. Fla. Feb. 8, 2011).

In *Turner*, the Southern District of Florida confronted an argument by the defendant, similar to that made by the Hays Defendants, that the aircraft assets transferred to the defendant, who had a security interest in the assets, "do not qualify as 'assets' under Section 726.102(2)." *Turner v. Ramo, LLC,* No. 09-81609-CIV, 2011 WL 541591, at *4 n. 3 (S.D. Fla. Feb. 8, 2011). The *Turner* court denied summary judgment, noting that the defendant's arguments were

"premised on the validity of the liens purportedly encumbering these aircraft…[and] because the validity of the loans is in dispute, the validity of the liens is likewise disputed." *Id*. As here, the *Turner* court faced several disputed issues of facts that belied the defendant's assertion that the loans were bona fide, including allegations that the defendant exercised control over the debtor and never repaid the purported loans. *See id*. at *3. Just as the *Turner* court denied summary judgment for the defendant because of the disputed issue of the validity of the loan, this Court should deny summary judgment for the Hays Defendants. *See also In re Lankry*, 263 B.R. 638, 646 (M.D. Fla. 2001) (denying summary judgment because genuine issues of material fact existed as whether or not certain property was an "asset" under FUFTA); *Lab. Corp. of Am. v. Prof'l Recovery Network,* 813 So. 2d 266, 271 (Fla. 5th DCA 2002) ("[T]he issue of fraud is not a proper subject of a summary judgment. Fraud is a subtle thing, requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud.") (citing sources omitted).

Moreover, the cases cited by the Hays Defendants, which purport to stand for the proposition that foreclosure of property encumbered by a valid lien does not constitute a "transfer" of an "asset" for purposes of a fraudulent transfer, are inapposite and readily distinguishable. [ECF No. 172, pp. 9-12]. First, *Jecker v. Hidden Valley, Inc.*, 422 N.J. Super. 155 (App. Div. 2011) was the result of an appeal following a trial, where the trial court considered the badges of fraud and their application. *Id.* at 159, 162. In stark contrast to the present case, the Hays Defendants seek summary judgment before this Court can consider, at trial, testimony regarding the badges of fraud set forth under Florida's fraudulent transfer laws. Moreover, in *Jecker*, there was no evidence presented regarding the insider nature of the loan

itself. Here, there is ample evidence that the "loan" was merely a disguised equity investment by Haysjet to Green Jets. [ECF No. 106-1, at 51:9-18].

Second, *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 124 F.3d 252 (1st Cir. 1997) is not instructive because there, the plaintiff "adduced no competent evidence that Fleet concocted the March 1993 default by Anson," and thus, "demonstrated no trialworthy issue" as to the fraudulent nature of the loan, the purported default thereunder, or the foreclosure itself. *Id.* at 262. Indeed, in *Peters*, <u>at</u> <u>trial</u>, the foreclosing party's "legal right to foreclose was essentially uncontroverted." *Id.* Here, the opposite is true. As this Court already found in its Memorandum Opinion, there is substantial evidence that the Hays Defendants improperly concocted the default to avoid Murphy & King's claim. [ECF No. 128, at p. 9-10.] Thus, unlike in *Peters*, the Hays Defendants' right to foreclose is far from uncontroverted.[1]

Finally, in *Yokogawa Corp. of Am. v. Skye Intern. Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex. App. 2005) the underlying security interest on which the foreclosure was based constituted a "valid lien." Here, there are outstanding issues of fact with respect to whether the "loan" from Haysjet was a "valid lien" or merely a disguised equity investment by Haysjet to Green Jets. [ECF No. 106-1, at 51:9-18]. These are issues properly addressed at trial.

### C. There Are Issues Of Material Fact Regarding The Value Of The Assets In The Possession And Control Of The Third Party Impleader Defendants

Even if Haysjet does have a valid first position lien as a senior secured creditor (which is by no means admitted), summary judgment is nevertheless inappropriate because the value of the assets in question has not been determined, and without such a valuation, this court cannot

---

[1] Despite not even having the issue of the validity of the loan or foreclosure before it, this Court has already expressed some doubt as to whether the foreclosure sale resulting in a single credit bid of $5,000 was commercially reasonable, and was only willing to assume, *arguendo*, that it was. [ECF No. 128, at p. 13].

conclusively determine that the Hays Defendants will not be liable to Murphy & King in this action.

During his deposition on April 19, 2016 held prior to the Court's initial bench trial, Mr. Hays admitted that prior to the foreclosure sale, Haysjet had not performed or obtained an appraisal of the Blackjet Assets. [ECF No. 106-1, at 77:6-9]. The Hays Defendants offer no evidence of, let alone establish beyond any issue of material fact, the actual value of the Blackjet Assets at the time of the fraudulent foreclosure and transfer. In fact, the Hays Defendants may have been enriched far in excess of the outstanding value of the "loan" such that other creditors would be entitled to surplus proceeds.

Valuation is a question of fact. *See In re Smith Materials Corp.*, 108 B.R. 784, 788 (Bankr. M.D. Fla. 1989); *Estate of Jelke v. C.I.R.*, 507 F.3d 1317, 1321 (11th Cir. 2007) (citing *Estate of Dunn v. Comm'r*, 301 F.3d 339, 348 (5th Cir. 2002). As such, where valuation is material and disputed, as it is here, summary judgment cannot be granted. *See Turner v. Ramo, LLC*, No. 09-81609-CIV, 2011 WL 541591, at*3–4 (S.D. Fla. Feb. 8, 2011). Specifically in the context of fraudulent transfers, Florida courts have denied summary judgment where questions concerning the nature and valuation of transferred assets remain outstanding. *See Yaralli v. Am. Reprographics Co., LLC,* 165 So. 3d 785, 789 (Fla. 4th DCA 2015).

As in *Turner* and *Yaralli*, here too, the question of valuation is material and disputed. If it is determined at trial that the value of the Blackjet Assets (which Murphy & King believes are in the possession and/or control of the parties other than the Hays Defendants) exceeded the outstanding amount owed to Haysjet on its purported loan, then Murphy & King would be entitled to recover the surplus to partially (or wholly) satisfy its judgments against the Blackjet

Entities. Because the value of the Blackjet Assets has not been determined, as in *Turner* and *Yaralli*, summary judgment is improper in this action.

### D. Summary Judgment Is Improper Because The Hays Defendants Have Not Complied with Discovery Obligations and Additional Discovery Is Needed

It is error to grant summary judgment where significant outstanding discovery remains, as it does here. The 11th Circuit has consistently held that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. *See e.g.*, *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *Jones v. City of Columbus, Ga.,* 120 F.3d 248, 253 (11th Cir. 1997). In particular, "summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." *Snook*, 859 F.2d at 870. Likewise, numerous cases in the Southern District of Florida confirm that summary judgment must not be granted until the parties conduct substantive discovery. *See e.g., Dagoberto Catalino Diaz Hernandez v. Laundry Zone, Inc.,* No. 1:15-CV-22708, 2015 WL 7890034, at *2 (S.D. Fla. Dec. 4, 2015); *Ventrassist Pty Ltd. v. Heartware, Inc.,* 377 F. Supp. 2d 1278, 1288 (S.D. Fla. 2005).

Murphy & King served a request for production and a set of interrogatories on the Hays Defendants in October 2016. The Hays Defendants demanded nearly 80 days to provide responsive discovery – needing that time not to prepare responses to discovery and document production but to instead to draft and prepare their Motion. On January 12, 2017, the Hays Defendants served written responses to discovery that were fraught with improper, boilerplate objections and blanket refusals to answer interrogatories.[2]

---

[2] A true and correct copy of the Hays Defendants' objections and non-responsive answers to Murphy & King's interrogatories are attached hereto as **Composite Exhibit "A."** Murphy & King is in the process of meeting its requirements under Magistrate Judge Hopkins' Standing Discovery Order by attempting to meet and confer with counsel for the Hays' Defendants and, if necessary, preparing a motion to compel the Hays Defendants' discovery.

The Eleventh Circuit has held that, "generally, summary judgment is premature when the moving party has not answered the opponent's interrogatories." *See Cowan v. J.C. Penney Co., Inc.*, 790 F.2d 1529, 1532 (11th Cir. 1986) (citing sources omitted). Considering that the Hays Defendants have not yet provided substantive answers to Murphy & King's interrogatories, summary judgment is premature here.

Additional discovery remains outstanding and incomplete. On December 23, 2016, Murphy & King propounded on all third party impleader defendants a Request for Inspection of Assets pursuant to Rule 34, Fed. R. Civ. P., for the purposes of inspecting the Blackjet Assets and conducting a valuation thereof. The inspection of the assets has not taken place. No depositions have been taken yet. Discovery is open until March 13, 2017. In short, little substantive discovery has taken place and the Hays Defendants are not entitled to ask this Court to enter summary judgment before Murphy & King has had an adequate opportunity for discovery. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). Under the clear precedent of the Eleventh Circuit, summary judgment is not appropriate at this stage.[3]

**E. The Overall Scheme Of Florida's Proceedings Supplementary Statute Weighs In Favor Of Allowing Murphy & King's Claims To Proceed To Trial**

As this Court acknowledged in its July 19, 2016 Order, the parties are procedurally before the Court pursuant to Rule 69, Fed. R. Civ. P., and Section 56.29, Florida Statutes (the proceedings supplementary statute). [ECF No. 142, p. 2 ]. Florida's proceeding supplementary statute expressly permits Murphy & King, as the judgment creditor, to "describe any property of

---

[3] Murphy & King anticipates filing a motion to compel if the meet and confer with counsel for the Hays Defendants does not resolve the referenced discovery issues. A district court must rule on an outstanding motion to compel before deciding a summary judgment motion, and thus, summary judgment is inappropriate prior to resolution of any discovery motions and completion of meaningful discovery. *See Vining v. Runyon*, 99 F.3d 1056, 1058 (11th Cir. 1996).

{40483697;2}                              15

the judgment debtor not exempt from execution in the hands of any person or any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment." *See* Section 56.29(2), Florida Statutes. That is precisely what Murphy & King has done here. As it relates to the Hays Defendants, they are admittedly in possession of the assets that formerly belonged to, were in the possession of, and were controlled by the judgment debtors, Blackjet and Blackjet Technology. Thus, pursuant to Section 56.29, Florida Statutes, Murphy & King is entitled to a trial or "hearing for post-judgment supplementary proceedings," to determine if the assets in the Hays Defendants' possession and/or control are reachable by Murphy & King to satisfy its judgments. [*See* ECF No. 142, ¶ 3; Fla. Stat. § 56.29(2)]. Summary judgment preventing this relief is inappropriate.

**WHEREFORE**, Murphy & King prays that this Honorable Court (i) deny the Hays Defendants' Motion for Summary Judgment [ECF No. 172], and (ii) grant Murphy & King such further and additional relief as this Court deems just and proper.

DATED: January 20, 2017.                    Respectfully Submitted,

*/s/ Kent B. Frazer*
**AKERMAN LLP**
Kent B. Frazer, Esq.
Florida Bar No. 685682
kent.frazer@akerman.com
Jeffrey B. Pertnoy, Esq.
Florida Bar No. 91939
jeffrey.pertnoy@akerman.com
777 S. Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401
Telephone:  (561) 653-5000
Facsimile:   (561) 659-6313
*Attorneys for Plaintiff*


# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20, 2017, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.[4]

| | |
|---|---|
| Dean Rotchin<br>2797 Fawn Drive<br>Loxahatchee, FL 33470<br>deanrotchin@gmail.com<br>*Pro Se Third Party Impleaded*<br>*Defendant by E-mail and U.S. Mail*<br><br>David Lloyd Merrill, Esq.<br>Trump Plaza Office Center<br>525 S. Flagler Drive<br>5th Floor<br>West Palm Beach, FL 33401<br>dlmerrill@merrillpa.com<br>*Counsel for Joseph Grimes* | Gary S. Betensky, Esq.<br>Brett L. Goldblatt, Esq.<br>**RICHMAN GREER, P.A.**<br>One Clearlake Centre – Suite 1504<br>2350 Australian Avenue South<br>West Palm Beach, FL 33401<br>gbetensky@richmangreer.com<br>bgoldblatt@richmangreer.com<br>*Counsel for Stephen Hays and*<br>*Haysjet Holdings, LLC* |

                                          */s/ Kent B. Frazer*
                                          Kent B. Frazer, Esq.

---

[4] Blackjet, Inc. and Blackjet Technology, Inc., c/o Dean Rotchin, President, 1675 Palm Beach Lakes Blvd., Suite 1, West Palm Beach, FL 33401, are no longer being served in this matter, as all mail served at the address listed by U.S. Mail is being returned to sender.